IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

Case No. 4:98-CR-00013-M-1

| | |
|---|---|
| TERRANCE LAMONT MOORE, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | ORDER |

These matters are before the court on Petitioner Terrance Lamont Moore's motions for compassionate release. DE 219, DE 225, DE 241. Also before the court are Moore's motion for leave to respond to the government's opposition to compassionate release [DE 229] and Moore's motion for leave to file supplement motion [DE 264]. For good cause shown, the motions are GRANTED. The court will consider Moore's reply to the government's response in opposition to the motions for compassionate release [DE 228] and his supplement motion for reduction of sentence under § 3582(c)(1)(A)(i) [DE 263].

The court has considered the entire record in this case and has carefully read the character letters submitted by Moore and all other filings. Due to the validity of Moore's sentence, the violent nature of his offense conduct, his significant criminal history and thirty inmate-infractions, and for the other reasons stated herein, Moore's motion is denied.

I. Background

On February 4, 1999, a jury found Moore guilty of four counts of armed bank robbery in violation of 18 U.S.C. § 2113, and four counts of using a firearm during and in relation to a crime

of violence in violation of 18 U.S.C. § 924(c)(1). DE 64. The Presentence Report establishes that Moore physically assaulted numerous bank employees during the four robberies, held a firearm in the faces of numerous victims, threatened to kill victims, and later threatened a juror. DE 206 at 3–6. Moore has nine prior convictions, including Armed Robbery, Common Law Robbery, Assault on a Female, and three Breaking and Entering offenses. DE 206 at 7–11.

On July 12, 1999, Moore was sentenced to a total term of 1107 months' imprisonment. DE 84. At the time he was sentenced, the mandatory minimum sentence applicable to his first firearm conviction (Count 2) was five years. *Id.* at 3. An additional twenty years was imposed consecutively for each of the remaining firearm convictions (Counts Four, Six, and Eight). *Id.* In combination, Moore received a 327-month sentence for his armed bank robbery convictions (Counts 1, 3, 5, and 7) and 780 months consecutively for his firearm convictions, totaling 1107 months. *Id.* at 2–3.

Moore has been in continuous custody since April 24, 1998. He has served over 273 months of actual time in custody for these offenses. DE 225-1 (BOP Sentence Computation for Terrance Moore). This amounts to approximately 25% of his full sentence. BOP projects Moore's release date to be September 12, 2077 (when Moore would be 109 years old). *Id.* Post-conviction, Moore has been disciplined for thirty inmate violations, including twice fighting with other inmates (2008 and 2017), twice possessing a dangerous weapon (2008 and 2020), six refusals to obey orders, and one threat of bodily harm. *See* DE 227-1 (Inmate Discipline Data. BOP records list Defendant as a high risk for recidivism in 2020); *see also* DE 227-2 (Inmate Profile).

On January 27, 2021, Moore filed the present pro se motion to reduce his sentence based on extraordinary and compelling circumstances and the factors in 18 U.S.C. § 3553. DE 219-1. Moore argues (1) the First Step Act's non-retroactive changes to his § 924(c) convictions, (2) a

2

change in his career offender status, and (3) his desire to become a lifetime caregiver to a mentally ill prisoner constitute extraordinary and compelling circumstances for compassionate release. *Id.* at 8–12. Moore's counsel filed a Memorandum in Support of Defendant's Motion [DE 225].

The United States responded [DE 227]. The United States contends the motion should have been brought under 28 U.S.C. § 2255. In the alternative, the government argues the motion for compassionate release should be denied because Moore has not established "extraordinary and compelling reasons." DE 227 at 2. Independently and adequately, the government argues the relevant § 3553 factors counsel denying the motion. *Id.*

In response to the court's January 28, 2022 order, the parties also dispute whether COVID-19 justifies Moore's motion for compassionate release. DE 233, DE 236, DE 241, DE 250.

## II. Legal Standards

The district court is generally prohibited from modifying an imprisonment term "once it has been imposed." 18 U.S.C. § 3582(c). However, the court may reduce a sentence if "extraordinary and compelling reasons warrant such a reduction." *Id.* § 3582(c)(1)(A)(i).

The First Step Act authorizes incarcerated individuals to directly petition district courts for compassionate release after first exhausting their administrative remedies. *Id.* § 3582(c)(1)(A).[1] The district court may reduce a defendant's term of imprisonment if (1) it finds that "extraordinary and compelling reasons warrant[ ] such a reduction," and (2) after considering any applicable § 3553(a) factors, it determines the requested reduction is consistent with the "applicable policy

---

[1] The compassionate release statute provides that a defendant may directly petition the court for a reduction of his sentence only if he (1) "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (2) if "30 days" have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The government does not contest that Moore exhausted his administrative remedies prior to filing his motion for compassionate release. DE 227 at 5.

3

statements issued by the Sentencing Commission." *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir.), *cert. denied*, 211 L. Ed. 2d 204, 142 S. Ct. 383 (2021). This court may deny the Defendant's motions based on its consideration of the applicable 3553(a) factors, even if extraordinary and compelling circumstances exist. *Id.* at 331–32.

There is no applicable policy statement governing motions for compassionate release filed by defendants. *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020). Therefore, the district court may consider any extraordinary and compelling reason for release.[2] *Id.* Although non-binding, the court can also consider the §1B1.13 guidelines in determining what is "extraordinary and compelling." *Id.*; *see also* U.S. Sent'g Guidelines Manual § 1B1.13, cmt. n.1(A)–(C) (U.S. Sent'g Comm'n 2018) (hereinafter "U.S.S.G.") (listing terminal illness; a condition from which a defendant is not expected to recover that substantially diminishes his ability to provide self-care within the correctional-facility environment; age 65 or older; and other listed requirements or enumerated family circumstances).

If the court finds the defendant has demonstrated "extraordinary and compelling reasons" for a reduction, it then considers the applicable § 3553(a) sentencing factors. 18 U.S.C. § 3582(c)(1)(A). Those factors include: "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need to avoid unwarranted sentence disparities"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the

---

[2] "An extraordinary reason must be most unusual, far from common, and having little or no precedent. *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021) (quoting *Webster's Third New International Dictionary: Unabridged* 807 (1971)). And a compelling reason must be both powerful and convincing. *United States v. Canales-Ramos*, 19 F.4th 561, 567 (1st Cir. 2021) (citing Webster's Third, *supra*, at 462)." *United States v. Jenkins*, 50 F.4th 1185, 1197–98 (D.C. Cir. 2022) (internal quotation marks omitted).

4

public," and "provide the defendant with . . . training, medical care, or other correctional treatment in the most effective manner." *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021).

In addition, "COVID-19 raises medical issues in the prison context that are particularly serious." *United States v. Byrd*, 859 F. App'x 669, 670 (4th Cir. 2021) (quoting *High*, 997 F.3d at 185). "The underlying arguments for release from prison based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19." *Id.* "In a different way, actually contracting COVID-19 can also provide a compelling case for relief if coupled with a prison's inability to address the condition and circumstances calling for compassion." *Id.* "When considering a defendant's motion for compassionate release, a district court must . . . consider[ ] the parties' arguments and ha[ve] a reasoned basis for exercising its own legal decisionmaking authority, so as to allow for meaningful appellate review." *Id.* at 671 (internal quotation marks, brackets, and emphasis omitted).

In sum, the court may grant a motion for compassionate release if it finds (1) such a reduction warranted by extraordinary and compelling reasons and (2) upon considering the § 3553(a) sentencing factors, decides "to exercise its discretion to reduce the defendant's term of imprisonment." *Hargrove*, 30 F.4th at 195 (quoting *High*, 997 F.3d at 186).

### III. Analysis

#### A. Moore's Motion is Properly Brought under the Compassionate-Release Statute.

As an initial matter, the government argues Moore's motion is a collateral attack challenging the validity of his judgment and sentence and therefore should be brought under 28 U.S.C. § 2255. DE 227 at 5. This argument is foreclosed by the Fourth Circuit's decisions in

5

*United States v. Ferguson*, 55 F.4th 262, 271 (4th Cir. 2022) and *United States v. McCoy*, 981 F.3d 271, 286–88 (4th Cir. 2020). In *Ferguson,* the Fourth Circuit explained that the *McCoy* petitioners had argued "a change in the sentencing law that occurred after their sentencings (but did not apply retroactively) merited a reduction in their sentences to conform to that change." *Ferguson,* 55 F.4th at 271. The court found that argument proper under the compassionate-release statute. *McCoy,* 981 F.3d at 284–88. By contrast, the petitioner's argument in *Ferguson* "would require the district court, in determining whether 'extraordinary and compelling reasons' for compassionate release exist, to evaluate whether Appellant's convictions . . . were valid." *Ferguson,* 55 F.4th at 271. The court found that argument improper under the compassionate-release statute because it asked the court to assess the validity of a prior sentence. *Id.* at 272. Similar to *McCoy* and in contrast with *Ferguson,* Moore does not challenge the validity of his sentences. He argues that a non-retroactive change in the law is an "extraordinary and compelling reason" for a reduction in his sentence. His argument is properly brought as a motion for compassionate release.

    **B. Moore's request for compassionate release is denied because he has not demonstrated "extraordinary and compelling reasons" for a release or reduction and the 3553 factors counsel against a release or reduction.**

Moore has not demonstrated extraordinary and compelling reasons for compassionate release and the § 3553 factors counsel against release. Moore's sentence is valid. As stated above, Moore argues that non-retroactive changes in the law, among some other factors, constitute "extraordinary and compelling reasons" for compassionate release. However, non-retroactive changes in the law occur frequently and are therefore ordinary, not extraordinary. *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 264–65 (1994) (explaining "a court is to apply the law in effect at the time it renders its decision" and the presumption against retroactivity is "deeply rooted in

6

our jurisprudence"); *see also Dorsey v. United States*, 567 U.S. 260, 280 (2012) ("We have explained how in federal sentencing the *ordinary practice* is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." (emphasis added)). Moreover, Moore has not provided extraordinary and compelling individualized circumstances for compassionate release. *McCoy*, 981 F.3d at 288 (explaining the importance of courts making "individualized inquiries" and "individualized determinations" under compassionate release).

Independently and adequately, the § 3553(a) factors counsel against compassionate release. Moore has a violent criminal history. His offense conduct involved a string of violent armed bank robberies, including numerous assaults and firearm crimes. Moore has also been sanctioned thirty times in custody, including for fighting with inmates, possessing dangerous weapons, and refusing to obey orders.

### i. Moore's arguments

Moore argues three "extraordinary and compelling reasons" warrant compassionate release. DE 219-1 at 2, 8–12. First, due to changes in § 924(c) sentencing law, Moore's sentence would be significantly lower if he was sentenced today. Second, Moore would no longer qualify as a career offender and he would not be subject to recency criminal history points pursuant to U.S.S.G. § 4A1.1(e). Third, Moore desires to become a lifetime caregiver to a mentally ill prisoner.

First, Congress prospectively narrowed section 924(c)'s stacking provision. Prior to the change, an individual convicted of violating 18 U.S.C. § 924(c) for the first time could receive anywhere from a five-to-ten-year minimum sentence consecutive to any other term of imprisonment imposed. *See* 18 U.S.C. § 924(c)(1)(A). However, a second or subsequent

7

conviction under § 924(c) carried a 20-year consecutive penalty. DE 206. This penalty provision was in effect when Moore was sentenced. *Id.* Today, each second or subsequent conviction under 18 U.S.C. § 924(c) carries a 25-year mandatory minimum sentence consecutive to any other sentence the person is ordered to serve. *See* 18 U.S.C. § 924(c)(1)(C)–(D). Prior to 2018, the 20-year or 25-year minimum sentence could be imposed on anyone who had previously been convicted of a § 924(c) violation. *See Deal v. United States*, 508 U.S. 129, 132 (1993); *see also United States v. Arey*, 461 F. Supp. 3d 343, 349 (W.D. Va. 2020) (discussing the penalties resulting from subsequent § 924 convictions under the old version of § 924(c)(1)(C)). The First Step Act amended this provision by specifying that the 20-year or 25-year consecutive sentence for a second or subsequent § 924(c) conviction may now apply only "after a prior conviction under this subsection has become final." 18 U.S.C. § 924(c)(1)(C). In other words, the consecutive sentence does not apply if the second or subsequent § 924(c) conviction arises from the same factual circumstances giving rise to the first conviction. *See United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020). Notably, the amendment applies only to a defendant not yet sentenced at the time of the amendment's enactment. First Step Act of 2018, Pub. L. No. 115-391, § 403(b), 132 Stat. 5194, 5222 (2018).

Moore argues that if the First Step Act had been in place when Moore was charged, he would have faced a 20-year rather than a 65-year minimum for the four § 924(c) charges. He is not a "recidivist offender." The offense conduct involved four robberies that occurred as part of the same course of conduct, occurring within the span of under six months. DE 225 at 6–7. Moreover, since the convictions were part of the same prosecution, Moore did not have a "final" § 924(c) conviction at the time he was sentenced. Moore argues this sentence disparity is an "extraordinary and compelling reason" for compassionate release.

8

Second, Moore argues that if he were sentenced today, he would not be a career offender and he would not qualify for an additional recency criminal history point under U.S.S.G. § 4A1.1(e). Although the offense level would be the same and the career offender designation does not impact his guideline range, Moore argues it must be corrected under Fourth Circuit caselaw. He argues that because he no longer qualifies for the career-offender enhancement or recency points, he has demonstrated "extraordinary and compelling reasons" for reducing his sentence. DE 225 at 9–10.

Third, Moore plans to provide lifetime care to Cameron Wilkerson, an inmate suffering from a severe mental disorder. Moore has been Wilkerson's caregiver for two years. Moore ensures Wilkerson reports to medical services each week, intervenes and reports on self-harming behavior, and provides emotional and mental stability for him. DE 219-1 at 11–12. Wilkerson's condition prevents him from performing basic daily activities, including taking his medication. Moore would like to be a permanent caregiver to Wilkerson. He asks the court to consider that as an extraordinary and compelling reason for release.

Finally, Moore argues the relevant § 3553 factors favor compassionate release. DE 225 10–16. He has served 273 months. He is a different man from the 31-year-old sentenced in 1999. He worked two years as a unit orderly and seven years in food service. He has made payments on his restitution. He has acquired marketable skills as a paralegal and assists other prisoners with their court filings. He plans to acquire a job upon release. He sees himself as a writer and has worked on both fiction and non-fiction works. Moore enrolled in the Challenge Program at USP Canaan, was taken under the wing of a mentor, and is dedicated to a new positive mindset and purpose in life. Moore also plans to serve as a permanent caretaker for Mr. Wilkerson. Moore regrets his past and wishes he could have pleaded guilty to all charges instead of going to trial. He

is focused on the future and plans to start a non-profit organization, the T.A.R.G.E.T. Youth Outreach Project, which will apply the lessons Moore learned in the Challenge Program and provide them to at-risk youth via a web-based mentoring service. He plans to reside with his mother upon release and he is supported by his friends and family. He recognizes the severity of his crimes, but he has matured, gained marketable skills, and worked diligently to take advantage of every rehabilitative opportunity offered him.

### ii. The court's analysis

The court commends Moore for his rehabilitative efforts; however, Moore has not demonstrated extraordinary and compelling reasons that would lead this court to exercise its discretion to grant compassionate release or a sentence reduction. A motion for compassionate release requires "individualized assessments of each defendant's sentence" and a "full consideration of the defendant['s] individual circumstances," including the severity of the defendant's sentence, the disparity between the defendant's sentences at the time of sentencing versus today, the defendant's age, the length of time the defendant's already served, the defendant's institutional records and steps toward rehabilitation. *McCoy*, 981 F.3d at 286.

"Stacked sentences under section 924(c) may form the basis for a successful motion under section 3582(c)(1)(A)." *United States v. Usher*, 572 F. Supp. 3d 162, 168 (E.D.N.C. 2021), *aff'd*, No. 21-7724, 2022 WL 1684504 (4th Cir. May 26, 2022). However, the court denies Moore's motion based on an individualized assessment of his sentence. First, as stated above, a non-retroactive change in the law is ordinary not extraordinary. *See, e.g., Dorsey*, 567 U.S. at 280 ("We have explained how in federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced."). Therefore, even though a non-retroactive change in the law can be considered in the

10

compassionate-release calculus, it is insufficient in this case. *See McCoy*, 981 F.3d at 286–87 ("As multiple district courts have explained, there is a significant difference between automatic vacatur and resentencing of an entire class of sentences . . . and allowing for the provision of individual relief in the most grievous cases."). The Defendant's 1107-month sentence reflects the serious and violent nature of his crimes. Moore's twenty-two years of time served is only a quarter of his original sentence. Neither Moore's age nor his time served is extraordinary or compelling. Moore has been sanctioned thirty times while incarcerated, including for fighting with inmates, possessing dangerous weapons, and refusing to obey orders. DE 227-1. BOP records list him as a high risk for recidivism. DE 227-2. Although Moore tries to downplay or contest this record, it is far from the "excellent institutional records" of the defendants in *McCoy* who were sentenced by a court that expressed grave doubts about the length of their sentences. 981 F.3d at 285–86.

In addition, although the court is not bound by the sentencing commission's definition of "extraordinary and compelling reasons" in Application Note 1 to § 1B1.13 of the United States Sentencing Guidelines, it finds the guideline instructive. *Id.* at 282 n. 7 (stating the application note "remains helpful guidance"). U.S.S.G. 1B1.13 defines extraordinary and compelling reasons as (A) medical condition of the defendant, (B) age of the defendant, (C) family circumstances, and (D) other reasons. Moore does not argue for compassionate release based on a medical condition (other than COVID-19 analyzed below), age, family circumstances, or any similar reason.

The change in Moore's career-offender status and recency criminal history points do not have to be corrected and they would have no impact on his sentence. The Supreme Court and Fourth Circuit have held, since the initial briefing in this case, that a district court "must recalculate the movant's Guidelines range 'only to the extent it adjusts for the Fair Sentencing Act.'" *United States v. Troy*, 64 F.4th 177, 184 (4th Cir. 2023); *see also Concepcion v. United States*, 142 S. Ct.

2389, 2402 n.6, 2403 n.8 (2022). Because the Sentencing Commission, not the Fair Sentencing Act, caused the change in Moore's career-offender status and recency criminal history points, this court is not required to engage in a guideline recalculation. DE 225. More importantly, these changes would have had no impact on Moore's sentence. Legal changes that would have no impact on a defendant's sentence are not extraordinary and compelling reasons for a reduction or release.

Finally, pursuant to 18 U.S.C. § 3582(c)(1)(A), an individualized assessment of the 3553(a) factors counsel against compassionate release.

First, Moore was arrested and convicted for four armed bank robberies including violence with firearms and assaults. DE 206 at 3–6. He brandished firearms, threatened to kill bank employees at gun point, and physically forced people to aid his robberies, breaking bones and terrorizing his victims. *Id.* Moore also has an extensive criminal history involving numerous violent crimes against person and property. *Id.* at 7–11.

Second, the sentence imposed was warranted when it was pronounced. It would undermine respect for the law to grant compassionate release given the Defendant's violent offense conduct and criminal history. The sentence imposed reflects the serious nature of Moore's offenses. It was lawful at the time of pronouncement and provides just punishment. The sentence is needed to deter Moore and others from engaging in similar violent conduct.

Third, a reduced sentence would undermine deterrence. Moore is a high risk for recidivism. DE 227-2. His criminal history and extensive disciplinary history while incarcerated confirm the need for deterrence. Moore has been disciplined thirty times including for fighting with other inmates and possessing dangerous weapons. DE 227-1. In sum, the §3553 factors counsel against release or a reduction in sentence.

The court commends Moore on his post-conviction rehabilitative efforts. His participation in the Challenge Program, his desire to start a charity, his plan to care for a special-needs inmate, his post-conviction classes, paralegal training, writing pursuits, and general desire to make amends and help others. The court also notes the character letters written on Moore's behalf. The court encourages Moore to continue these rehabilitative efforts. However, the totality of the evidence does not support compassionate release or a sentence reduction.

### iii. COVID-19

Moore also argues "the continuing risk COVID-19 presents to his health . . . is a further factor supporting his request for compassionate relief." DE 241 at 4. "In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Adamson*, 831 F. App'x 82, 83 (4th Cir. 2020) (citation omitted); *United States v. Murry*, 538 F. Supp. 3d 615, 618–19 (E.D. Va. 2021). Moore asserts that he has "not been negatively affected by [the] COVID-19 pandemic while in BOP custody." DE 239. He states that he is pre-hypertensive and anemic [DE 239] but he does not argue these conditions make him more susceptible to COVID-19. He also notes that a sentence served during COVID-19 is more severe than during normal times. DE 241 at 4–5. Moore has not demonstrated a particularized susceptibility to the disease or a particularized risk of contracting the disease at his prison facility, and the mere presence of COVID-19 in the facility without any health risks is insufficient to support compassionate release. *See United States v. Keffer*, No. 1:17-CR-00143-MR-WCM-3, 2020 WL 5889250, at *2 (W.D.N.C. Oct. 5, 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release,

especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.") (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)); *see also United States v. Gregory*, 538 F. Supp. 3d 562, 567 (D. Md. 2021) ("The fact that COVID-19 is present in a correctional facility, however, is not alone sufficient to qualify an inmate for compassionate release."). Moreover, the government's briefing details the ways in which the BOP is managing and mitigating the effects of COVID-19. DE 236 at 2–14. Under these circumstances, the COVID-19 pandemic does not convince the court to exercise its discretion and grant Moore's motion for compassionate release.

## IV. Conclusion

For the reasons stated herein, Moore's motions for compassionate release [DE 219, DE 225, DE 241, 263] are DENIED.

SO ORDERED this 14th day of July, 2023.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE